IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ALVIN HENDERSON                                                              PLAINTIFF

VS.                              Case No. 04-CV-1065

GEORGIA-PACIFIC CORPORATION                                                  DEFENDANT

## MEMORANDUM OPINION

This lawsuit involves Alvin Henderson's allegations of race discrimination by Defendant Georgia-Pacific Corporation ("GP") in the administration of its millitary leave policies, in violation of 42 U.S.C. § 1981.

Before the Court is GP's Motion for Summary Judgment. (Doc. 16). Henderson has responded. (Doc. 21). The Court finds this motion ripe for consideration.

**I.    Background**

GP is in the business of manufacturing wood products. On January 15, 1990, GP hired Henderson as a entry-level paper utility worker at its facility in Crossett, Arkansas. In December 1997, Henderson was promoted to the position of first class journeyman mechanic. The entire time Henderson worked for GP he was a member of the United States Military Reserves.

On January 1, 2002, in the wake of 9/11 and the anticipated increase in military demands, GP implemented a Millitary Service Leave Policy (the "2002 Policy"). The 2002 Policy went into effect on January 1, 2002, and provided certain compensation for employees involuntarily called to military duty.

On September 19, 2002, Henderson was called to active duty, for a one year period. On January 1, 2003, GP implemented a new Military Service Leave Policy (the "2003 Policy"). The 2003 Policy provided for the same compensation as the 2002 Policy, plus additional compensation in the form of differential pay. Henderson returned to work at GP on September 28, 2003, and was formally released from active duty on November 3, 2003. During the time

Henderson was deployed, his millitary pay was less than the salary he received at GP. GP did not provide Henderson with differential pay for the time he was deployed; in other words, GP did not provide Henderson with additional compensation to make up the difference between Henderson's millitary pay and his GP salary.

Henderson's complaint alleges that GP's failure to provide him with differential pay was because of his race and in violation of § 1981. GP argues that because Henderson was deployed in 2002, he was subject to the 2002 Policy, which did not provide for differential pay.

**II.      Standard of Review/Discussion**

The standard of review for summary judgment is familiar and established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); Krenik v. County of Le Sueur, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines to help determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial . . . whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Agristor Leasing v. Farrow, 826 F.2d 372 (8th Cir. 1987); Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund, 800 F.2d 742, 746 (8th Cir. 1986).

The burden of proof is on the moving party to set forth the basis of its motion. Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002), citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. Id., citing Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The Eight Circuit Court of Appeals, in Scheer Const. Co. v. Greater

Huron Development Corp., 700 F.2d 463, 465 (8th Cir. 1983), quoting Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981), in a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth specific facts that raise a genuine issue of fact for trial.

Controlled by these standards, the Court considers the pending motion for summary judgment.

GP argues that it is entitled to summary judgment because Henderson cannot establish that GP intended to discriminate against him on the basis of his race. The Court agrees.

To set forth a case of intentional discrimination in violation of § 1981, Henderson may satisfy his burden of proof by offering direct evidence of discriminatory intent or he may demonstrate such intent indirectly by following the McDonell Douglas Corp. v. Green, 411 U.S. 792, 800-806 (1973), burden-shifting framework. Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997). Because Henderson does not have direct (strong) evidence of GP's discriminatory intent, the Court will proceed to the burden-shifting framework of McDonell Douglas, which requires Henderson to establish his prima facie case of discrimination, and, assuming Henderson meets his burden, GP must produce a legitimate, nondiscriminatory reason for its actions. Id. If GP meets its burden of production, the burden of proof shifts back to Henderson to rebut GP's legitimate reasons for its action as not the true reason and a pretext for discrimination. Id.

Starting with Henderson's prima facie case of race discrimination in violation of § 1981, he must show: (1) he is a member of a protected class; (2) that GP intended to discriminate against him on the basis of his race; and (3) the discrimination interfered with a protected activity as defined by § 1981. Wortham v. American Family Ins. Group, 385 F.3d 1139, 1141 (8th Cir. 2004). Discriminatory intent necessary to a § 1981 claim may be demonstrated through disparate impact, departures from procedural norms, history of discriminatory actions, and other relevant facts. Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992).

Conclusory allegations of generalized racial bias do not establish discriminatory intent, Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996); nor does Henderson's subjective belief that he was discriminated against. Rollins v. Missouri Dept. of Conservation, 315 F.Supp.2d 1011, 1024 (W.D. Mo. 2004).

Turning to the evidence before the Court, Henderson has produced no direct or circumstantial evidence such that a reasonable jury could conclude that GP intended to discriminate against him by denying him differential pay because of his race; therefore, his § 1981 claims must fail. Henderson was activated to millitary service in 2002. Although Henderson argues that nothing in the language of the 2003 Policy prohibits its application to service members deployed before 2002, the non-controverted summary judgment evidence shows that GP did not apply the 2003 Policy to any of its employees who were deployed in 2002. In Henderson's deposition he claims that he obtained documents from the public drive of GP's computers that show that GP voluntarily paid its employees differential pay dating back to the Kosovo Conflict of the late 1990's, but Henderson does not produce these e-mails in support of his response to the motion for summary judgment.

Henderson also points to two black employees who were deployed in 2003 and did not receive differential pay for that year and several white employees who received differential pay for 2003. The non-controverted facts show that the black employees' millitary pay exceeded their GP salary, so they would not be entitled to differential pay under the terms of the 2003 Policy. In short, the only reasonable conclusion that could be drawn from the evidence before the Court is that GP did not pay Henderson differential pay for his period of deployment because he was activated in 2002 and subject to the 2002 Policy.

Even assuming Henderson could establish his prima facie case, GP would still be entitled to summary judgment because it has offered a legitimate reason for its actions (Henderson was activated in 2002 and subject to the terms of the 2002 Policy), and Henderson has failed to come forward with any evidence showing this reason is merely pretext for

discrimination.

**III. <u>Conclusion</u>**

Upon consideration, for the reasons discussed herein, the Court finds the motion for summary judgment should be and hereby is **<u>granted</u>** and this case is hereby dismissed with prejudice. A judgment of even date, consistent with this opinion, will issue.

**IT IS SO ORDERED** this 29th day of August, 2005.


                                          /s/ Harry F. Barnes
                                          Hon. Harry F. Barnes
                                          U.S. District Judge